## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Voters Alliance; Mary Amlaw; Ken Wendling; Tim Kirk, <br><br> Plaintiffs, <br><br> v. <br><br> Keith Ellison, in his official capacity as Attorney General; Brad Johnson, in his official capacity as Anoka County Attorney, <br><br> Defendants. | Court File No. _____ <br><br><br><br> **VERIFIED COMPLAINT** <br><br> **DECLARATORY AND INJUNCTIVE RELIEF SOUGHT** |

## <u>INTRODUCTION</u>

1.  "Felons still serving their sentences do not have a right to vote in Minnesota" is a statement supported by a plain reading of Article VII, section 1, of the Minnesota Constitution and the Minnesota Supreme Court's decision in *Schroeder v. Simon*, 985 N.W.2d 529 (Minn. 2023).

2.  The Plaintiffs here, Minnesota Voters Alliance, Mary Amlaw, Ken Wendling, and Tim Kirk, believe that statement to be true, and have even brought a lawsuit in Minnesota state court arguing as such. *See Minnesota Voters All. v. Hunt*, Minn. Dist. Ct. No. 02-CV-23-3416.

3.  Plaintiffs intend to continue to speak—both through their First Amendment right to petition the courts with their state-court lawsuit, and also in the public square—as to their view of the Minnesota Constitution: felons who have not served their full sentences, or otherwise had their sentences discharged, cannot legally vote.

1

4.   However, a new Minnesota law, Laws of Minnesota 2023, chapter 34, article 2, section 2, effective June 15, 2023, to be codified at Minnesota Statutes, section 211B.075 (the "Speech Code"), threatens anyone who utters such a phrase, or other like phrases, with criminal and civil penalties.

5.   Under the Speech Code, no one can knowingly make a "materially false" statement "within 60 days of an election" with the "inten[t] to impede or prevent another person from exercising the right to vote."

6.   These forbidden phrases include, but are not limited to, "information regarding the time, place, or manner of holding an election; [and] the qualifications for or restrictions on voter eligibility at an election."

7.   To make matters worse, not only is the Speech Code enforceable by the Attorney General and County Attorney—elected political officials—but it is also enforceable by "any person injured," allegedly, by such speech. Those potential plaintiffs in such a lawsuit—who could be any Minnesotan claiming supposed "injury" from speech—are entitled, if they prevail, to recover damages, costs of investigation, and attorney fees.

8.   Thus, as of June 15, 2023, saying "felons still serving their sentence do not have a right to vote in Minnesota" could subject a speaker, like Plaintiffs here, to a gross-misdemeanor criminal charge and potentially thousands of dollars in civil penalties under the Speech Code. In addition, accused persons will be forced to "lawyer up" and pay a defense attorney thousands of dollars just to defend their speech.

9.   This is the law's express purpose and effect, as described by its authors and supporters to members of the media:

2

> Rep. Emma Greenman, DFL-Minneapolis, a national voting rights attorney and chief author of the election bill [that contains to-be-codified section 211B.075], said the provision is designed to protect voters from intimidation, harassment or anything that would hinder them from voting.
> . . . .
> Now that the state is restoring voting rights for over 50,000 people on parole or probation, Greenman anticipates disinformation that might say, '**You're a felon and you can't vote**.'

Deena Winter, *Election bill would make it illegal to knowingly spread false information that impedes voting*, Minnesota Reformer, Mar. 7, 2023, *available at* https://minnesotareformer.com/2023/03/07/election-bill-would-make-it-illegal-to-knowingly-spread-false-election-info-that-impedes-voting/ (last accessed Aug. 21, 2023) (emphasis added). A true and correct copy of this article is attached as **Exhibit 1**.

10. Further, after Plaintiffs filed a lawsuit seeking to stop the ongoing violation of the Minnesota Constitution occasioned by chapters 12 and 62 of the 2023 session laws (the "Felong Voting Law"), the author of the Felon Voting Law, Representative Cedric Frazier, stated this:

> "**This is nothing more than an attempt to suppress the vote of certain members in our communities across the state. By bringing this lawsuit, MVA is seeking to create confusion and fear among our neighbors who have recently had their voting rights restored.** It is not lost on me that the previous voter disenfranchisement law had a disproportionate impact on communities of color, particularly African Americans.

*Rep. Cedric Frazier statement on Restore the Vote Lawsuit*, Minn. House of Representatives, June 29, 2023, available at https://house.mn.gov/members/profile/news/15548/37364 (last accessed Aug. 21, 2023). A true and correct copy of this statement is attached as **Exhibit 2**.

11. Representative Frazier's statement is either false or ignorant, but the message is

clear: those who take the Plaintiffs' positions on this important political issue are considered, by those who wrote and voted for Minnesota's new law, to be intentionally causing "confusion and fear."

12. Thus, while Plaintiffs believe—and intend to keep saying—that "felons still serving their sentences do not have a right to vote in Minnesota," they reasonably fear prosecution for doing so, and fear "retaliation" from those convicted of felonies still serving their sentences bringing lawsuits against them for their speech.

13. Given what Minnesota's lawmakers have openly said, and given the text of the Speech Code, any person of ordinary firmness would think twice before speaking on this issue. The Speech Code chills Plaintiffs' speech by giving them reasonable cause to fear prosecution based on their intended course of action.

14. The proper remedy for speech that one finds distasteful is not State punishment; it is "counterspeech"—calling out false statements and making the case as to why they are false. Both the First Amendment to the United States Constitution and Article I, Section 3 of the Minnesota Constitution protect Plaintiffs' right to interpret and explain their views of the Minnesota Constitution and who may vote in Minnesota elections.

15. Plaintiffs therefore ask the Court to declare Laws of Minnesota 2023, chapter 34, article 2, section 2, subdivisions 2 and 5 (soon-to-be Minnesota Statutes section 211B.075, subds. 2 and 5), unconstitutional and to enjoin the Defendants from enforcing those provisions.

4

## PARTIES

16. Petitioner Minnesota Voters Alliance ("MVA") is a nonpartisan organization which advocates for election integrity and provides research and voter education to Minnesotans. MVA regularly engages in speech on matters of public concern, especially concerning eligibility for voting and proper election procedures. MVA has repeatedly argued, in the public square, that felons still serving their sentences cannot vote under the Minnesota Constitution. In fact, MVA Executive Director Andrew Cilek has published numerous op-eds in Minnesota newspapers making that statement. MVA, by itself and through its executive director, intends to continue saying that felons who have not completed their sentences cannot vote under the Minnesota Constitution. MVA has also filed a lawsuit in Minnesota state court to formally challenge the ongoing violation of state law caused by the new felon-voting law. MVA also often educates people about its views on voter eligibility and election integrity.

17. With some trepidation, MVA intends to continue speaking as it has in support of its position on felon eligibility for voting in Minnesota, among many other issues which could relate to eligibility for voting (such as related to voting under guardianship), within the State of Minnesota and within Anoka County. Plaintiff MVA fears that it will be prosecuted by the Defendants or sued by third parties who disagree with its political speech because they claim that MVA is in violation of the Speech Code.

18. In addition, the individual Plaintiffs described below are each long-time supporters and volunteers with MVA. MVA has associational standing to bring this lawsuit on behalf of those for whom it advocates, including the individual Plaintiffs. This raises additional

concerns for MVA: because it is a voter and election-integrity education organization, MVA fears that the "vicarious liability" and "conspiracy" provisions of the Speech Code, subdivision 4, will lead to Defendants, or third-parties which oppose MVA's speech on matters of public concern, pursuing vicarious liability against MVA through a lawsuit based on another person or entity's speech.

19. Plaintiff Mary Amlaw is an individual resident of Anoka County, Minnesota. Plaintiff Amlaw is active in state and local politics as a long-time Republican activist. Plaintiff Amlaw regularly engages in speech on matters of public concern, including concerning eligibility for voting and proper election procedures. Plaintiff Amlaw believes, says, and will continue to believe and say that felons still serving their sentences cannot vote under the Minnesota Constitution, within the State of Minnesota and within Anoka County.

20. With some trepidation, Plaintiff Amlaw intends to continue speaking as she has in support of her position on felon eligibility for voting in Minnesota, among many other issues which could relate to eligibility for voting (such as related to voting under guardianship). Plaintiff Amlaw fears that she will be prosecuted by the Defendants or sued by third parties who disagree with her political speech because they claim that she is in violation of the Speech Code.

21. Petitioner Ken Wendling is an individual resident of Anoka County, Minnesota. Plaintiff Wendling is active in state and local politics. He is currently a Council Member of the City of Spring Lake Park, Minnesota and has served as Acting Mayor of Spring Lake Park when called upon to do so. He also ran for the Minnesota House of Representatives, District 37A, in 2020, as the candidate for the Republican Party. Mr. Wendling is also a

long-time election judge. Plaintiff Wendling regularly engages in speech on matters of public concern, including concerning eligibility for voting and proper election procedures. Plaintiff Wendling believes, says, and will continue to believe and say that felons still serving their sentences cannot vote under the Minnesota Constitution, within the State of Minnesota and within Anoka County.

22. With some trepidation, Plaintiff Wendling intends to continue speaking as he has in support of his position on felon eligibility for voting in Minnesota, among many other issues which could relate to eligibility for voting (such as related to voting under guardianship). Plaintiff Wendling fears that he will be prosecuted by the Defendants or sued by third parties who disagree with his political speech because they claim that he is in violation of the Speech Code.

23. Petitioner Tim Kirk is an individual resident of Anoka County, Minnesota. Plaintiff Kirk regularly engages in speech on matters of public concern, including concerning eligibility for voting and proper election procedures. Plaintiff Kirk believes, says, and will continue to believe and say that felons still serving their sentences cannot vote under the Minnesota Constitution, within the State of Minnesota and within Anoka County.

24. With some trepidation, Plaintiff Kirk intends to continue speaking as he has in support of his position on felon eligibility for voting in Minnesota, among many other issues which could relate to eligibility for voting (such as related to voting under guardianship). Plaintiff Kirk fears that he will be prosecuted by the Defendants or sued by third parties who disagree with his political speech because they claim that he is in violation of the Speech Code.

25. Defendant Keith Ellison, in his official capacity, is the attorney general of the State of Minnesota. His office address is 445 Minnesota Street, Saint Paul, Minnesota 55101. Upon information and belief, he resides in the District of Minnesota.

26. Defendant Ellison is expressly charged with the enforcement of Laws of Minnesota 2023, chapter 34, article 2, section 2, subdivisions 2, 4, and 5 (soon-to-be Minnesota Statutes section 211B.075, subds. 2, 4, and 5).

27. Defendant Brad Johnson, in his official capacity, is the county attorney for Anoka County, Minnesota. His office address is 2100 3rd Avenue, Anoka, Minnesota 55303. Upon information and belief, he resides in the District of Minnesota.

28. Defendant Johnson is expressly charged with the enforcement of Laws of Minnesota 2023, chapter 34, article 2, section 2, subdivisions 2, 4, and 5 (soon-to-be Minnesota Statutes section 211B.075, subds. 2, 4, and 5).

## JURISDICTION AND VENUE

29. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

30. Venue is proper because a substantial part of the events giving rise to the claims occurred in the District of Minnesota. *See* 28 U.S.C. § 1391(b)(2).

31. The Court has supplementary jurisdiction over the claims that the Speech Code violates the Minnesota Constitution. *See* 28 U.S.C. § 1367.

## STATEMENT OF THE CLAIM

32. The Minnesota Legislature passed, and on May 5, 2023, the Governor signed, House File 3, Laws of Minnesota 2023 chapter 34, effective June 15, 2023. The Speech Code amended Minnesota Statutes 2022 and will be codified at section 211B.075.

33. Relevantly, the Speech Code, subdivisions 2(a)-(b), states:

> (a) No person may, within 60 days of an election, cause information to be transmitted by any means that the person:
> > (1) intends to impede or prevent another person from exercising the right to vote; and
> > (2) knows to be materially false.
> (b) The prohibition in this subdivision includes but is not limited to information regarding the time, place, or manner of holding an election; the qualifications for or restrictions on voter eligibility at an election; and threats to physical safety associated with casting a ballot.

34. Neither Chapter 211B nor the Speech Code defines "impede," explains what rises to the level of constituting an impediment to exercising the right to vote, or articulates what constitutes a "threat" to a person's "physical safety," whether such a "threat[] to physical safety" is consistent with the definition of a "true threat" under First Amendment jurisprudence.

35. The Speech Code, subdivision 5, makes the violation of subdivision 2 a "gross misdemeanor" subject to "a civil penalty of up to $1,000 for each violation." Moreover, "[t]he attorney general, a county attorney, [(the Defendants here)] or any person injured by an act prohibited by this section, may bring a civil action to prevent or restrain a violation of this section," subd. 5(b), and "to recover damages, together with costs of investigation and reasonable attorney fees, and receive other equitable relief as determined by the court," subd. 5(c).

36. The Speech Code even allows the Defendants here to bring a civil action to "*prevent*…a violation of this section if there is a reasonable basis to believe that an individual or entity…*intends* to commit a prohibited act." In other words, one need not have even uttered the claimed false speech to be prosecuted. This creates a prior restraint on speech.

37. The Speech Code also threatens with a "vicarious liability" or "conspiracy" charge a person (which may be an organization, like MVA) who "intentionally aids, advises, hires, counsels, abets, incites, compels, or coerces a person to violate any provision of this section or attempts to aid, advise, hire, counsel, abet, incite, compel, or coerce a person to violate any provision of this section; or…conspires, combines, agrees, or arranges with another to either commit a violation of this section or aid, advise, hire, counsel, abet, incite, compel, or coerce a third person to violate any provision of this section." Speech Code, subd. 4.

38. The Speech Code does not define what it means to "advise," "counsel," or "incite" another person to violate it, or whether those provisions apply to an attorney providing advice related to a lawsuit related to challenged speech, or whether they apply to a person relying on such an attorney's advice.

39. According to the chief author of the Speech Code, Representative Emma Greenman, the law "is designed to protect voters from intimidation, harassment or anything that would hinder them from voting." Exhibit 1, Winter, *supra* ¶ 9. Rep. Greenman also reportedly connected the aim of the Speech Code with recently signed legislation, Laws of Minnesota 2023, Chapters 12 and 62, which restored voting rights to certain felons: "Now that the state is restoring voting rights for over 50,000 people on parole or probation, Greenman anticipates disinformation that might say, 'You're a felon and you can't vote.'" Exhibit 1, Winter, *supra* ¶9.

40. Laws of Minnesota 2023, chapters 12 and 62, amended Minnesota Statutes 2022, section 201.014, (the "Felon Voting Law") to state:

An individual who is ineligible to vote because of a felony conviction has the civil right to vote restored during any period when the individual is not incarcerated for the offense. If the individual is later incarcerated for the offense, the individual's civil right to vote is lost only during that period of incarceration. For purposes of this subdivision only, an individual on work release under section 241.26 or 244.065 or an individual released under section 631.425 is not deemed to be incarcerated.

41. The Felon Voting Law purports to restore the right to vote to those convicted of felony crimes who have not completed their sentences and are still on supervised release, probation, or work release.

42. Plaintiffs oppose the Felon Voting Law as violating the Minnesota Constitution, Article VII, section 1, which states that those convicted of a felony crime may not vote "unless restored to civil rights."

43. Plaintiffs oppose the Felon Voting Law as contrary to the Minnesota Supreme Court's interpretation of the Minnesota Constitution, Article VII, section 1, in *Schroeder v. Simon*, 985 N.W.2d 529, 544-45 (Minn. 2023).

44. Plaintiffs therefore oppose the Felon Voting Law as being in excess of the authority granted to the Minnesota Legislature by the Minnesota Constitution.

45. Plaintiffs filed a lawsuit in Minnesota state court to stop the ongoing excess of authority by certain state actors caused by the Felon Voting Law. *Minnesota Voters All. v. Hunt*, Minn. Dist. Ct. No. 02-CV-23-3416

46. Plaintiffs intend to speak, verbally and in writing, in opposition to the Felon Voting Law.

47. Plaintiffs intend to convey, verbally and in writing, the information that felons on supervised release, probation, or work release do not have the right to vote in Minnesota under the Minnesota Constitution.

48. Plaintiffs also have concerns about other citizens' eligibility to vote in elections. For example, Plaintiffs believe that those under guardianship may not vote under the Minnesota Constitution, Article VII, section 1. However, one state district court has held that this provision of the Constitution conflicts with other provisions and is therefore unconstitutional. *See In re Brian W. Erickson*, Minn. Dist. Ct. No. 27-GC-PR-09-57, Order, Oct. 4, 2012. Plaintiffs disagree with this decision and are concerned that citizens under guardianship can be and have been manipulated for their vote. Plaintiffs intend to speak against any such manipulation and abuse of vulnerable adults, which would require saying and conveying to the public that those under guardianship are not eligible to vote in Minnesota elections pursuant to the Minnesota Constitution. This information could be interpreted by Defendants or a third party to violate the Speech Code because of the existence of a district court decision contrary to Plaintiffs' view of the Minnesota Constitution.

49. Plaintiffs' proposed speech is protected by the First Amendment. It is "quintessential political speech, which is at the heart of the protections of the First Amendment." *281 CARE Comm. v. Arneson*, 638 F.3d 621, 635 (8th Cir. 2011) (citing *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).

50. The Speech Code expressly charges Defendants with prosecuting violations of it.

51. Plaintiffs fear prosecution by Defendants or by a third party for engaging in this protected speech.

52. The Speech Code expressly targets political and campaign speech both based on its intended targets, discussed above, and because it prohibits speech within 60 days of an election.

53. The Speech Code fails to advance any government interest because it directly regulates what is said or distributed during an election and is a content and viewpoint-based restriction.

54. There is no evidence advanced in any committee hearing, or on the legislative floor, or which could be advanced, which could show that the Speech Code is actually necessary to achieve its claimed interests.

55. The Speech Code is not narrowly tailored to achieve any government interest because it sweeps too broadly, leaves significant influences bearing on claimed interests unregulated, and could be replaced by counterspeech, which is a less restrictive alternative.

56. The Speech Code fails to support any state interest because it perpetuates fraud in the form of third parties, such as political opponents or opponents of Plaintiffs' state-court lawsuit, suing Plaintiffs in order to shut down their political speech.

57. The Speech Code fails to support any state interest because the legislature did not identify any empirical problem in Minnesota with deceptive speech causing eligible voters not to vote or participate in elections, and on information and belief, no evidence that would justify the Speech Code exists.

58. The Speech Code sweeps in a significant amount of protected speech but fails to support a state interest because insufficient claims made under it will rarely be resolved by

the time an election is complete, and it takes time and resources to fight insufficient allegations, so the false "remedy" of proving one's innocence is thus largely meaningless.

59. The Speech Code is unconstitutional and unlawfully chills political speech because the filing of a complaint alone would damage Plaintiffs and other like individuals, and so penalizes core political speech with a burden of proof even lower than a preponderance of the evidence.

60. The *mens rea* of the Speech Code does not adequately narrow it because it does not address Plaintiffs' reasonable concern that someone will file a complaint against them, or they might be prosecuted, based on a truthful statement someone deems false.

61. On information and belief, the aforementioned intended speech of Plaintiffs could be interpreted by a third party, whether reasonably or not, to violate the Speech Code, and therefore Plaintiffs have an objectively reasonable fear that this Speech Code will sweep in their protected speech for prosecution. Plaintiffs also have a reasonable fear that they will have to hire counsel and pay to defend their speech in the event of any such prosecution or lawsuit.

62. Defendants are state actors for purposes of 42 U.S.C. § 1983.

63. Defendants are connected with the enforcement of the Speech Code because they are expressly charged with enforcing it.

64. Plaintiffs only seek prospective relief which addresses Defendants' ongoing violation of federal law.

## CAUSES OF ACTION

**Count One**
**42 U.S.C. §§ 1983, 1988**
**U.S. Const. Amend. I**
**Minn. Const. art. I, § 3**

### First Amendment Freedom of Speech – Overbreadth

65. Plaintiffs incorporate the preceding paragraphs by reference.

66. The Free Speech Clause of the First Amendment to the Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech."

67. The Free Speech Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the U.S. Constitution.

68. The Free Speech Clause also prohibits speech restrictions which sweep too broadly in relation to the statute's legitimate sweep; "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008).

69. The Speech Code sweeps in a wide swath of protected speech, including true speech proposed by Plaintiffs and others who might make similar political statements in the future, because political opponents and the Defendants may subjectively determine it to be false and therefore bring a civil action against Plaintiffs and like persons.

70. The Speech Code also impermissibly prohibits "intended" speech before it is uttered, and criminalizes so-called advising, counseling, and inciting violations, without defining those terms.

71. The Speech Code's overbreadth is thus substantial in relation to any legitimate target, if one exists.

72. Consequently, the Speech Code is unconstitutionally overbroad, and Plaintiffs ask the Court to so declare and to enjoin the law's enforcement.

73. Plaintiffs are also entitled to their taxable costs and reasonable attorney fees, upon prevailing and upon filing of an appropriate motion for the same.

**Count Two**
**42 U.S.C. §§ 1983, 1988**
**U.S. Const. Amend. I**
**Minn. Const. art. I, § 3**

**First Amendment Freedom of Speech – Content and Viewpoint Discrimination**

74. Plaintiffs incorporate the preceding paragraphs by reference.

75. The Free Speech Clause prohibits speech restrictions based on content or viewpoint.

76. In other words, laws which "target speech based on its communicative content…are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

77. On its face, the Speech Code targets the content of speech, and expressly targets, without limitation, "information regarding the time, place, or manner of holding an election; [and] the qualifications for or restrictions on voter eligibility at an election."

78. To determine whether a person violates the Speech Code, Defendants or any third party seeking to prosecute violations must consider the content of Plaintiffs' speech, or any other person's speech.

16

79. The Speech Code is not narrowly tailored to serve any compelling government interest. It is overbroad and not actually necessary to serve the interests it claims to support, and it perpetuates fraud itself.

80. A less restrictive alternative exists, which is as effective to combat any claimed false statements subject to the Speech Code's enforcement: counterspeech.

81. The Speech Code imposes an objectively reasonable chill on the speech of any person desiring to engage in political expression, like Plaintiffs.

82. Consequently, the Speech Code is unconstitutional, and Plaintiffs ask the Court to so declare and to enjoin the law's enforcement.

83. Plaintiffs are also entitled to their taxable costs and reasonable attorney fees, upon prevailing and upon filing of an appropriate motion for the same.

**Count Three**
**42 U.S.C. §§ 1983, 1988**
**U.S. Const. Amend. I, XIV**
**Minn. Const. art. I, §§ 3, 7**

**First Amendment Freedom of Speech – Vagueness**
**Procedural Due Process – Vagueness**

84. Plaintiffs incorporate the preceding paragraphs by reference.

85. The Free Speech Clause and the Due Process Clause prohibit restrictions on speech that are so vague that they fail to give precise notice of what conduct is forbidden.

86. Courts apply a heightened vagueness test to criminal penalties of protected speech. *E.g., Reproductive Health Serv. v. Webster*, 851 F.2d 1071, 1077-78 (8th Cir. 1988), *rev'd on other grounds for mootness*, 492 U.S. 490 (1989).

87. The Speech Code is vague as to (a) what it means to "impede" a person's right to vote, (b) what rises to the level of constituting an impediment to exercising the right to vote, (c) what constitutes a "threat" to a person's "physical safety," (d) whether such a "threat[] to physical safety" is consistent with the definition of a "true threat" under First Amendment jurisprudence; (e) what conduct rises to the level of "intent" to violate the Speech Code, or (f) what it means to "advise," "counsel," or "incite" a person to violate the Speech Code.

88. These words are "fraught with ambiguity" and are thus "incapable of objective measurement." *Baggett v. Bullitt*, 377 U.S. 360, 367 (1964).

89. These terms "abut upon sensitive areas of basic First Amendment freedoms." *Id.* at 372.

90. These terms require a person, and even their *attorneys*, to "steer far wider of the unlawful zone….than if the boundaries of the forbidden areas were clearly marked." *Id.*

91. As to the terms "advise," and "counsel," these have the effect of leading professionals who might be a position of discussing Minnesota's election laws and its Constitution to "avoid the risk of loss of employment, and perhaps profession, only be restricting their conduct to that which is unquestionably safe." *Id.* Thus, the Speech Code's vagueness causes additional overbreadth.

92. As to the specter of "threats to physical safety" raised by the Speech Code, there is no evidence to support the existence of any "threats" in the legislative record, nor are Plaintiffs aware of any other evidence of "threats" to which this provision might be targeted, and any interest in stopping "true threats" to a person are adequately addressed by

Minnesota's criminal law related to "true threats." *See* Minn. Stat. § 609.713; *see also State v. Mrozinski*, 971 N.W.2d 233, 239 (Minn. 2022); *see also Virginia v. Black*, 538 U.S. 343, 360 (2003). Thus, the Speech Code is not actually necessary to deter any criminal conduct without First-Amendment value.

93. As to the term "incite," any interest in deterring such speech supposedly reached by the Speech Code is otherwise served through laws prohibiting incitement to imminent violence where the speaker intends to incite such action by third persons. *See* Minn. Stat. § 609.72, subd. 1(3); *see also State v. Hensel*, 901 N.W.2d 166, 176-77 (Minn. 2017) (interpreting section 609.72, subdivision 1(3) to apply to "fighting words," which by their nature "incite" violence); *see also United States v. Alvarez*, 567 U.S. 709, 717 (2012) (incitement of imminent, lawless action not protected by First Amendment). Thus, the Speech Code is not actually necessary to deter any criminal conduct without First-Amendment value.

94. These terms in the Speech Code are not narrowly tailored to achieve a compelling government interest, and the Speech Code is not actually necessary to address the speculative evil it supposedly targets.

95. The Speech Code imposes an objectively reasonable chill on the speech of any person desiring to engage in political expression, like Plaintiffs.

96. Consequently, the Speech Code is unconstitutional, and Plaintiffs ask the Court to so declare and to enjoin the law's enforcement.

97. Plaintiffs are also entitled to their taxable costs and reasonable attorney fees, upon prevailing and upon filing of an appropriate motion for the same.

**Count Four**
**42 U.S.C. §§ 1983, 1988**
**U.S. Const. Amend. I**
**Minn. Const. art. I, § 3**

**First Amendment Freedom of Speech – Prior Restraint**

98. Plaintiffs incorporate the preceding paragraphs by reference.

99. Prior restraints on speech "are the most serious and least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "In the first place, the main purpose of [the First Amendment] is 'to prevent all such *previous restraints* upon publications as had been practiced by other governments….'" *Near v. Minnesota*, 283 U.S. 697, 714 (1931) (emphasis in original).

100. The Speech Code allows the Defendants to bring a civil action to "*prevent*…a violation of this section if there is a reasonable basis to believe that an individual or entity…*intends* to commit a prohibited act." (emphasis added). In other words, one need not have even uttered the claimed false speech to be prosecuted. This allows the prosecution of speech before it is even uttered—what amounts to an Orwellian regulation of "thought-crime."

101. While some categories of speech are unprotected, such as fighting words or true threats, there is virtually no justification under the First Amendment for a law which stops speech from being uttered in the first place.

102. The Speech Code creates a prior restraint on speech in the provision that authorizes prosecution to "prevent" speech from being uttered if the State decides that a person, like Plaintiffs, merely "intends" to violate the Speech Code.

103.     There is no justification for this prior restraint on speech.

104.     Thus, the Speech Code is not narrowly tailored to achieve a compelling government interest, and the Speech Code is not actually necessary to address the speculative evil it supposedly targets.

105.     The Speech Code imposes an objectively reasonable chill on the speech of any person desiring to engage in political expression, like Plaintiffs.

106.     Consequently, the Speech Code is unconstitutional, and Plaintiffs ask the Court to so declare and to enjoin the law's enforcement.

107.     Plaintiffs are also entitled to their taxable costs and reasonable attorney fees, upon prevailing and upon filing of an appropriate motion for the same.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court grant them relief as follows:

A.     A declaration that the Speech Code violates 42 U.S.C. § 1983 and Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 3 and 7 of the Minnesota Constitution.

B.     An injunction prohibiting Defendants from enforcing the Speech Code.

C.     Plaintiffs' taxable costs and disbursements as allowed by law and after proper application for the same;

D.     An award of attorney fees in favor of Plaintiffs and against Defendants upon Plaintiffs prevailing in this litigation and upon post-judgment application for the same, pursuant to 42 U.S.C. § 1988; and

21

E.      An award of all other relief that the Court may deem just, proper, or equita-

ble.

                                        **UPPER MIDWEST LAW CENTER**

Dated:  September 11, 2023              */s/ James V. F. Dickey*
                                        Douglas P. Seaton (#127759)
                                        James V. F. Dickey (#393613)
                                        8421 Wayzata Blvd., Suite 300
                                        Golden Valley, Minnesota 55426
                                        Doug.Seaton@umlc.org
                                        James.Dickey@umlc.org
                                        (612) 428-7000

                                        **LIBERTY JUSTICE CENTER**

                                        Reilly Stephens*
                                        440 N. Wells Street, Suite 200
                                        Chicago, Illinois 60654
                                        (312) 637-2280
                                        rstephens@ljc.org
                                        * *Pro hac vice admission to be sought*

                                        *Attorneys for Plaintiffs*

## VERIFICATION

I, Andrew Cilek, declare as follows:

1. I am the Executive Director of Plaintiff Minnesota Voters Alliance in this case, and I make this declaration on personal knowledge.

2. I have personal knowledge of Minnesota Voters Alliance, its activities, and its intentions, including those set out in the foregoing Complaint, and if called upon to testify I would competently testify as to those matters.

3. I verify under penalty of perjury that the factual statements in this Complaint concerning Minnesota Voters Alliance, its activities, and its intentions are true and correct.

**Executed in Hennepin County, Minnesota
on September 8, 2023**

**Minnesota Voters Alliance**

*/s/ Andrew Cilek*
By: Andrew Cilek
Its: Executive Director

## VERIFICATION

I, Mary Amlaw, declare as follows:

1. I am Mary Amlaw, a Plaintiff in this case, and I make this declaration on personal knowledge.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Complaint, and if called upon to testify I would competently testify as to those matters.

3. I verify under penalty of perjury that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct.

**Executed in Anoka County, Minnesota**
**on September 8, 2023**

                        *_/s/ Mary Amlaw_____*
                        Mary Amlaw

**VERIFICATION**

I, Ken Wendling, declare as follows:

1.  I am Ken Wendling, a Plaintiff in this case, and I make this declaration on personal knowledge.

2.  I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Complaint, and if called upon to testify I would competently testify as to those matters.

3.  I verify under penalty of perjury that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct.

**Executed in Anoka County, Minnesota
on September 8, 2023**

*/s/ Ken Wendling*
Ken Wendling

**VERIFICATION**

I, Tim Kirk, declare as follows:

1. I am Tim Kirk, a Plaintiff in this case, and I make this declaration on personal knowledge.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Complaint, and if called upon to testify I would competently testify as to those matters.

3. I verify under penalty of perjury that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct.

**Executed in Anoka County, Minnesota
on September 8, 2023**

        */s/ Tim Kirk*
        Tim Kirk