02-CV-23-3416

CASE 0:23-cv-02774-NEB-TNL   Doc. 12-1   Filed 10/02/23   Page 1 of 16   Filed in District Court
State of Minnesota
6/29/2023 9:07 AM

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF ANOKA | TENTH JUDICIAL DISTRICT |
| | CASE TYPE: Other Civil |

| | |
|---|---|
| Minnesota Voters Alliance; Mary Amlaw; Ken Wendling; Tim Kirk,<br><br>Petitioners,<br><br>v.<br><br>Tom Hunt, in his official capacity as elections official for Anoka County; Steve Simon, in his official capacity as Secretary of State; Anoka County; the Office of the Minnesota Secretary of State; Shannon Reimann, in her official capacity as chief executive officer of the Minnesota Correctional Facility – Lino Lakes,<br><br>Respondents. | Court File No. _____<br><br><br>**PETITION FOR A WRIT OF QUO WARRANTO OR, IN THE ALTERNATIVE, FOR A DECLARATORY JUDGMENT** |

Petitioners Minnesota Voters Alliance, Mary Amlaw, Ken Wendling, and Tim Kirk hereby file this Petition for a Writ of Quo Warranto, or, in the alternative, for a Declaratory Judgment, because the passage of H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22, into law requires the Respondents to act in excess of their authority under the Minnesota Constitution.

## FACTUAL ALLEGATIONS

1. Under the Minnesota Constitution, Article VII, section 1, those convicted of a felony crime may not vote "unless restored to civil rights." That's "civil rights," plural, meaning all civil rights that a non-felon possesses. The Constitution does not create legislative authority to restore the singular right to vote before all civil rights are restored to an individual convicted of a felony.

1

2. On February 15, 2023, the Minnesota Supreme Court in *Schroeder v. Simon* expressly acknowledged this reading of the Constitution. The Court said:

> Even if we assume that the words "civil rights" as used in Article VII, Section 1, were intended to broadly include any right that a person has, it does not follow from the fact that *some* of those rights may be restored upon release from incarceration that *all* civil rights must be restored. Different rights may be restored at different times (and may be limited in different ways at different times). Indeed…the constitutional rights of parolees and probationers may be limited in ways that the rights of persons who have completed their sentences may not be.

*Schroeder v. Simon*, 985 N.W.2d 529, 544-45 (Minn, 2023).

3. The Court also observed:

> [T]he very fact that probation and conditional release did not exist in 1858 means that release from incarceration was the completion of a sentence. Accordingly,…one way to interpret the framers' understanding of the phrase "unless restored to civil rights" is that restoration occurs upon completion of the sentence.

*Id.* at 544.

4. That final sentence encapsulates the correct interpretation of the Constitution as understood by those who framed it and those living when it was adopted. That interpretation endures. Restoration to "civil rights," plural, means discharge of the whole felony sentence. It means that a person can only vote after felony conviction if, by an act of the Legislature or the Governor, all of that person's civil rights are restored.

5. The Constitution does not say that a person convicted of a felony could not vote "unless restored to the right to vote." It states *all* civil rights must be restored, and "civil rights" include more than just the right to vote. Again, the *Schroeder* Court observed that "the constitutional rights of parolees and probationers may be limited in ways that the rights of persons who have completed their sentences may not be." *Schroeder*, 985 N.W.2d at 544-45.

6. Other than the civil right to vote, "civil rights" includes, according to the Bouvier Law

Dictionary, "[t]he rights and freedoms accorded free individuals in the state. Civil rights are the whole of the rights and liberties that are provided by law to any person who is required to obey the laws and is not under a punishment by law for a criminal act." "Civil Rights (Civil Liberties)," Wolters Kluwer Bouvier Law Dictionary Desk Edition (2012). The United States Supreme Court has likewise interpreted "civil rights," plural, under federal law to mean "the rights to vote, hold office, and serve on a jury." *Logan v. United States*, 552 U.S. 23, 28 (2007) (Ginsburg, J., for a unanimous U.S. Supreme Court).

7. "Civil rights" include a host of other rights denied to those on supervised release or probation. Felons cannot freely travel, hold office, or serve on a jury until their sentence is completed.

8. Supervised release has become a major part of Minnesota's criminal sentencing structure after amendments to the Minnesota Statutes in 1993. Under Minnesota law, felons serve *one-third* of their felony sentences under supervised release. Minn. Stat. § 244.01, subd. 8. In other words, generally, someone sentenced to 6 years of imprisonment would be incarcerated for 4 years and serve 2 years of supervised release. Contrary to popular misconception, supervised release is not a small portion of a sentence "tacked on" to the end. It is an integral part of the felony sentence in Minnesota.

9. Probation works differently for felony convictions. Under Minnesota law, probation for felony sentences can last for up to 5 years and can be imposed instead of jail time. Minn. Stat. § 609.135, subd. 2, *as amended by* S.F. 2909, Laws of Minnesota 2023, ch. 52, art. 6, sec. 13.

10. But both supervised release and probation restrict the civil rights of the felon, despite him not being incarcerated. As the Minnesota Department of Corrections explains,

> Every person on supervised release follows conditions such as having an approved residence, submitting to regular drug and alcohol tests, restrictions against

3

accessing the Internet, and in some cases electronic monitoring. If someone violates the conditions of their release, a warrant will be issued and they will be taken into custody. The case will be reviewed to determine how severe the violation was and what action should be taken as a result.

"How Supervision Works," Minnesota Department of Corrections, available at https://mn.gov/doc/community-supervision/supervision-101faq/#:~:text=Every%20person%20on%20supervised%20release,in%20some%20cases%20electronic%20monitoring (last accessed June 28, 2023).

11. Similarly, those on probation often cannot use or possess firearms, ammunition, or explosives, must report changes of address, employment, and phone number to a probation officer, must check in with a probation officer at set times, and cannot travel out of state without permission. *E.g.,* "Rights and Responsibilities of Probationer," Anoka County, *available at* https://www.anokacountymn.gov/DocumentCenter/View/29090/Probation-Rights-Responsibilities-flyer-2022?bidId= (last accessed June 28, 2023); "Standard Conditions of Probation for Felony Convictions," Minnesota Judicial Branch, *available at* https://www.mncourts.gov/mncourtsgov/media/Judicial_Council_Library/Policies/PolicyAttachments/Standard-Conditions-of-Probation-for-Felony-Convictions.pdf (last accessed June 28, 2023).

12. Despite the impossibility of declaring the Constitution satisfied when it is not, the Minnesota Legislature passed, and on March 3, 2023, the Governor signed, House File 28, Laws of Minnesota 2023 chapter 12, which amended Minnesota Statutes 2022, section 201.014, to state:

> An individual who is ineligible to vote because of a felony conviction has the civil right to vote restored during any period when the individual is not incarcerated for the offense. If the individual is later incarcerated for the offense, the individual's civil right to vote is lost only during that period of incarceration.

This purports to restore the right to vote to those convicted of felony crimes who have not

completed their sentence and are still on supervised release or probation.

13. Thereafter, the Legislature passed, and the Governor signed, on May 24, 2023, House File 1830 as Minnesota Laws chapter 62. Chapter 62 amended Chapter 12, discussed just above, to include the following change, underlined:

> An individual who is ineligible to vote because of a felony conviction has the civil right to vote restored during any period when the individual is not incarcerated for the offense. If the individual is later incarcerated for the offense, the individual's civil right to vote is lost only during that period of incarceration. <u>For purposes of this subdivision only, an individual on work release under section 241.26 or 244.065 or an individual released under section 631.425 is not deemed to be incarcerated.</u>

Laws of Minnesota 2023, ch. 62, art. 4, sec. 10. The law became effective June 1, 2023.

14. "Work release," unlike probation or supervised release, occurs *during the time* convicted felons are still in "confinement" and serving the carceral portion of their sentence. Minn. Stat. § 241.26 ("Release under this subdivision is an extension of the limits of confinement . . . ."); Minn. Stat. § 244.065 (referring to section 241.26); Minn. Stat. § 631.425, subd. 4 (confinement when not employed).

15. To be clear, the Minnesota Supreme Court in *Schroeder* did state that under Article VII, section 1, "the Legislature has broad, general discretion to choose a mechanism for restoring the entitlement and permission to vote to persons convicted of a felony," *Schroeder*, 985 N.W.2d at 556, and the Legislature may act through "a legislative act that generally restores the right to vote upon the occurrence of certain events," *id.* at 534.

16. But the "certain events" to which the Court refers must be the restoration of all "civil rights." The Court's statements cannot be read to authorize the Legislature to skip the required restoration of all civil rights in order to add voters to the Minnesota voter roll.

17. The Legislature can certainly reform sentencing to have the effect of restoring all civil

5

rights. It could return Minnesota to its policy of 1857, when, as the Court noted, "probation and conditional release did not exist," and those finished with their incarceration were done with their sentences. *Schroeder*, 985 N.W.2d at 544. It did that, in part, by reducing probation terms through Laws of Minnesota 2023, ch. 52, art. 6, sec. 13.

18. But the Legislature cannot declare the Constitution satisfied without doing the work to satisfy it. The point of the Constitution (the point of any constitution, for that matter) is that even where it gives power to the Legislature, the Legislature is still constrained by the Constitution's supreme authority as to the boundaries of legislative power.

19. A person on supervised release, probation, or work release because of a felony conviction has not been restored to civil rights. The Legislature's decree in House Files 28 and 1830 that a felon has "the right to vote if [he is] not currently incarcerated for conviction of a felony offense" is factually incorrect and inconsistent with the reality that those on supervised release, probation, or work release after felony conviction do not, as the Minnesota Supreme Court noted, have all of the civil rights a non-felon in Minnesota has.

20. The Legislature tacitly acknowledged this by only partially amending Minn. Stat. § 609.165 as follows: "When a person has been deprived of civil rights by reason of conviction of a crime and is thereafter ***discharged***, such ***discharge*** shall restore the person to all civil rights and to full citizenship, ~~with full right to vote and hold office,~~ the same as if such conviction had not taken place, and the order of discharge shall so provide." Laws of Minnesota 2023, ch. 12, sec. 7 (emphasis added). The Legislature acknowledges in Minn. Stat. § 609.165, subd. 1 that only the full "discharge" of the felony sentence restores those convicted of felonies to ***all*** civil rights.

21. In addition, the Legislature tacitly acknowledged that those serving felony sentences have not been restored to all civil rights by leaving intact Minn. Stat. § 609.165, subd. 2, which provides

that "discharge" only occurs "by order of the court following stay of sentence or stay of execution of sentence," or "upon expiration of sentence."

22. As such, no official in Minnesota, including those named as Respondents in this Petition, has the authority to: (1) inform persons who are convicted of a felony and still serving their sentences that they may vote, or; (2) allow a person convicted of a felony and still on supervised release or probation to register to vote or vote in any election.

23. Yet beginning on June 1, 2023, H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22, authorize and require Respondents to do these things, specifically:

    a. Direct Respondent Simon and the Office of the Minnesota Secretary of State ("OSS") to create a document which will mislead those serving felony sentences that they may vote.

    b. Direct Respondent Hunt to modify the "Voter's Bill of Rights" and post it at all polling places in Anoka County informing those still serving felony sentences that they have the right to vote.

    c. Upon information and belief, direct Respondents Simon and the OSS to modify the state voter registration application, the polling place roster at every polling place, and the voter signature certificate for mail and absentee ballots to incorrectly allow those still serving felony sentences to certify their eligibility to vote.

    d. Direct Respondent Reimann and others in her position to designate an official to provide notice to those still serving felony sentences that they have the right to vote, and a voter registration application.

    e. By virtue of allowing those still serving felony sentences to vote and register to vote, direct Respondent Hunt and/or Respondents Simon and OSS to illegally modify the Statewide Voter Registration System ("SVRS") pursuant to Minn. Stat. §§ 201.021 and 201.022 to include as eligible voters those who are serving felony sentences.

    f. By virtue of allowing those still serving felony sentences to vote and register to vote, direct Respondent Hunt to illegally modify the SVRS pursuant to Minn. Stat. § 201.054, subd. 2, to include as eligible voters those who are serving felony sentences.

g. By virtue of allowing those still serving felony sentences to vote and register to vote, direct Respondent Hunt and/or Respondents Simon and OSS to illegally accept voter registration applications, both before and on Election Day, to include as eligible voters in the SVRS those who are serving felony sentences pursuant to Minn. Stat. § 201.061.

h. By virtue of allowing those still serving felony sentences to vote and register to vote, direct Respondent Hunt to illegally modify the county master list pursuant to Minn. Stat. § 201.091 to include as eligible voters those who are serving felony sentences.

i. By virtue of allowing those still serving felony sentences to vote and register to vote, direct Respondent Hunt and those election judges and absentee ballot board members serving in Anoka County to accept ballots cast illegally by those who are serving felony sentences.

j. By virtue of allowing those still serving felony sentences to vote and register to vote, direct Respondents Simon and OSS to certify vote totals reported by county auditors which include votes cast by those who are serving felony sentences.

k. By virtue of allowing those still serving felony sentences to vote and register to vote, direct Respondents Simon and OSS to incorrectly determine, under Minn. Stat. § 201.145, subd. 3, that those serving felony sentences are actually eligible to vote, and report to the county auditors an incomplete list of those ineligible to vote.

l. By virtue of allowing those still serving felony sentences to vote and register to vote, forbid Respondent Hunt pursuant to Minn. Stat. § 201.145 from including as "challenged" on the SVRS those who are serving felony sentences.

m. Require, pursuant to Minn. Stat. § 201.145, Respondent Simon to prepare a list of those no longer incarcerated for removal from "challenged" status on the SVRS, and Respondent Hunt to remove said challenge status related to those serving felony sentences but no longer incarcerated.

n. By virtue of allowing those still serving felony sentences to vote and register to vote, forbids Respondent Hunt from reporting to the county attorney pursuant to Minn. Stat. § 201.145 those who illegally voted while serving a felony sentence.

o. Appropriates $14,000 to Respondent OSS to implement the provisions of Laws of Minnesota, chapter 12, including the provision allowing those serving felony sentences to vote.

24. Each of the actions listed in Paragraph 23 exceeds Respondents' authority in an ongoing fashion because the Minnesota Constitution forbids those serving felony sentences from voting. The Court should therefore issue a writ of quo warranto requiring Respondents to identify what

8

authority they have to take any action that would allow a person serving a felony sentence to vote, register to vote, or any other such action listed in Paragraph 23, and then should enjoin any such action.

25. Each of these actions listed in Paragraph 23 requires an expenditure of Petitioners' tax dollars, both state and local, and the Legislature expressly appropriated funds for the implementation of H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22, and their created statutory directives.

## PARTIES

26. Petitioner Minnesota Voters Alliance ("MVA") is a nonpartisan Minnesota nonprofit corporation which advocates for election integrity and provides research and voter education, and advocacy. MVA advocates for the interests asserted by the individual Petitioners described below, who are each long-time supporters and volunteers with MVA.

27. Petitioner Mary Amlaw is an individual resident of Anoka County, Minnesota, and a taxpayer of the State of Minnesota and Anoka County.

28. Petitioner Ken Wendling is an individual resident of Anoka County, Minnesota and a taxpayer of the State of Minnesota and Anoka County.

29. Petitioner Tim Kirk is an individual resident of Anoka County, Minnesota and a taxpayer of the State of Minnesota and Anoka County.

30. Upon information and belief, Respondent Tom Hunt is the elections official for Anoka County, Minnesota charged with conducting actions identified herein, overseeing elections, verifying election returns from precincts and the absentee ballot board, managing the master list and SVRS for Anoka County, and implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as*

*amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22 insofar as they relate to Anoka County. Respondent Hunt is sued in his official capacity, and as such resides in Anoka County, Minnesota.

31. Respondent Steve Simon is the Minnesota Secretary of State and charged with maintaining the SVRS at the state level, conducting actions identified herein, and implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22. Respondent Simon is sued in his official capacity.

32. Respondent OSS is the Office of the Minnesota Secretary of State and charged with maintaining the SVRS at the state level, overseeing Minnesota's elections, conducting actions identified herein, and implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22.

33. Respondent Anoka County is a Minnesota county responsible for its elections and implementing election policies, including implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22.

34. Respondent Shannon Reimann is warden and chief executive officer of the Minnesota Correctional Facility – Lino Lakes, and in that capacity is responsible, in part, for implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22. Respondent Reimann is only sued in her official capacity, and as such resides in Anoka County, Minnesota.

35. Upon information and belief, Respondents are already taking unlawful actions, which actions are ongoing, which implement H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22.

36. As an example, on June 2, 2023, Respondents OSS and Simon issued a release stating that as of June 1, 2023, "[t]he law restoring voting rights to Minnesotans who have left prison behind takes effect today, June 1." "Voting Rights Restored to Formerly Incarcerated Minnesotans," Office of the Minnesota Secretary of State, *available at* https://www.sos.state.mn.us/about-the-office/news-room/voting-rights-restored-to-formerly-incarcerated-minnesotans/. The same article states that "we have to hit the ground running to get our newly eligible neighbors registered," and that "[t]he Secretary of State's online voter registration portal and its printable voter registration form have been updated to accommodate all Minnesotans who are not currently incarcerated."

37. Public reports indicate that many Minnesotans who are not eligible to vote under the Minnesota Constitution are registering to vote because of Respondents' actions alleged herein. Brian Bakst, "Law restoring voting rights to thousands kicks in as sign-ups start," MPRNews, June 1, 2023, *available at* https://www.mprnews.org/story/2023/06/01/law-restoring-voting-rights-to-thousands-kicks-in-as-signups-start.

38. Upon information and belief, those ineligible to vote under the Minnesota Constitution because they have not been discharged from their felony sentence are registering to vote in an ongoing fashion in Anoka County, Minnesota, and Respondents Hunt, Anoka County, and Reimann are facilitating those registrations in an ongoing fashion, as well as taking the actions described in paragraph 23, also in an ongoing fashion, and these actions exceed these Respondents' constitutional authority.

39. Upon information and belief, Respondents OSS and Simon are taking actions described in paragraph 23 on an ongoing basis, and are using funds appropriated from the Legislature on an ongoing basis, to implement the 2023 session laws described herein, and these actions exceed these Respondents' constitutional authority.

40. The individual Petitioners have standing as taxpayers to seek a writ of quo warranto which alleges an ongoing excess of Respondents' authority.

41. Petitioner MVA has associational standing to bring this lawsuit on behalf of those for whom it advocates, including the individual Petitioners.

42. Petitioners may bring a declaratory judgment action as taxpayers to restrain unlawful expenditures of tax dollars, which includes the implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22, based on the imminent and ongoing threat of harm alleged herein.

## JURISDICTION AND VENUE

43. The Minnesota Constitution, Article VI, Section 2, gives the Minnesota Supreme Court "original jurisdiction in such remedial cases as are prescribed by law." This includes the power to issue the writ of quo warranto. Minn. Stat. § 480.04 (2018). *Save Lake Calhoun v. Strommen*, 943 N.W.2d 171, 174 (Minn. 2020).

44. Although the Minnesota Supreme Court has original jurisdiction to issue the writ of quo warranto, in *Rice v. Connolly*, the Minnesota Supreme Court instructed that petitions for the writ should be filed in the first instance in district court. 488 N.W.2d 241, 243-44 (Minn. 1992). *Save Lake Calhoun*, 943 N.W.2d at 174.

45. Actions for declaratory judgment may be heard alongside petitions for a writ of quo

warranto. *Rice v. Connolly*, 488 N.W.2d 241, 244 (Minn. 1992).

46. Therefore, this Court has jurisdiction over this petition in its entirety.

47. Venue is proper in this Court because Petitioners reside in Anoka County, a majority of the Respondents are located in Anoka County, Minnesota, and the implementing of H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22, with the concomitant actions which will exceed legal authority will occur, in part, in Anoka County, Minnesota. Minn. Stat. §§ 542.01, .03.

48. The Respondents' actions described herein are not substantially justified, and no special circumstances make an award of attorney fees and costs in Petitioners' favor unjust.

**PRAYER FOR RELIEF**

A. As alleged herein, Respondents' implementation of H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22, exceeds Respondents' authority because the Minnesota Constitution forbids those serving felony sentences from voting or registering to vote, and other actions alleged herein which enable those serving felony sentences to vote or register to vote.

B. Petitioners request that the Court grant this Petition for Writ of Quo Warranto, issue an order to show cause to Respondents directing Respondents to identify their legal authority for the acts alleged to be in excess of their authority as soon as possible, and issue the writ.

C. Petitioners request that the Court order a show-cause and merits hearing on this Petition as soon as possible. Expedited treatment of this petition is warranted because the implementation of H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62,

article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22, and the required actions are taking place and will continue to take place in the immediate future, and will affect elections this year, for which absentee voting begins on September 22, 2023.

D. Petitioners request that the Court consolidate any motion to dismiss brought by Respondents with the merits hearing on the issuance of the writ of quo warranto and establish a briefing schedule, with requirements consistent with Minnesota General Rule of Practice 115, and hearing date that allows the Court to adjudicate this matter before September 22, 2023, and specifically:

   a. Petitioners request that the Court require Petitioners to submit their brief in support of granting the Petition no later than July 14, 2023;

   b. Petitioners request that the Court require Respondents to respond and affirmatively support their motion to dismiss, if any, no later than August 1, 2023;

   c. Petitioners request that the Court require Petitioners to reply no later than August 8, 2023; and

   d. Petitioners request that the Court hear the matter no later than August 21, 2023 and issue a decision no later than September 22, 2023.

E. Petitioners request that the Court, after the hearing, issue a writ of quo warranto adjudicating this matter in Petitioners' favor, declaring the actions implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22 and/or the statutory provisions they create unconstitutional and therefore in excess of Respondents' authority, and enjoining Respondents from implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22 and/or the statutory provisions they create in any way.

F. Petitioners may bring an action for a declaratory judgment under Minn. Stat. § 555.01, *et*

14

*seq.* in the same proceeding in which they seek a writ of quo warranto. *Rice v. Connolly*, 488 N.W.2d 241, 244 (Minn. 1992). Thus, Petitioners alternatively request that the Court issue a declaratory judgment declaring the actions, described in paragraph 23 and elsewhere, which would implement H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22 and/or the statutory provisions they create unconstitutional and therefore in excess of Respondents' authority, and enjoining Respondents from implementing H.F. 28, Laws of Minnesota 2023, chapter 12, *as amended by* Laws of Minnesota, chapter 62, article 4, section 10, and H.F. 1830, Laws of Minnesota 2023, chapter 62, article 4, sections 10 and 22 and/or the statutory provisions they create in any way.

G. Petitioners request that the Court award Petitioners and their attorneys attorney fees and costs under the Minnesota Equal Access to Justice Act, Minn. Stat. § 15.471 *et seq.*, upon prevailing and after proper application for the same; and

H. Petitioners request an award of all other relief that the court may deem just, proper, or equitable.

Respectfully submitted,

                  **UPPER MIDWEST LAW CENTER**

Dated: June 28, 2023           /s/ *James V. F. Dickey*
                  Douglas P. Seaton (#127759)
                  James V. F. Dickey (#393613)
                  8421 Wayzata Blvd., Suite 300
                  Golden Valley, Minnesota 55426
                  doug.seaton@umlc.org
                  james.dickey@umlc.org
                  (612) 428-7000

                  *Attorneys for Petitioners*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, subd. 2, to the party against whom the allegations in this pleading are asserted.

Dated:  June 28, 2023                                     */s/ James V. F. Dickey*
                                                          James V. F. Dickey (#393613)