UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNESOTA VOTERS ALLIANCE, MARY AMLAW, KEN WENDLING, and TIM KIRK, | Case No. 23-CV-2774 (NEB/TNL) |
| Plaintiffs, | ORDER |
| v. | |
| KEITH ELLISON, in his official capacity as Attorney General, and BRAD JOHNSON, in his official capacity as Anoka County Attorney, | |
| Defendants. | |

Minnesota Statute Section 211B.075 ("Election Law") prohibits making materially false statements with the intent to prevent someone from voting. Plaintiffs challenge the Election Law on First and Fourteenth Amendment grounds. The Court finds the law constitutional, so the complaint is dismissed.[1]

---

[1] American Civil Liberties Union of Minnesota filed an unopposed motion to appear as amicus. (ECF No. 48.) The Court has discretion on this matter, which it uses to grant the motion. *See Mausolf v. Babbitt*, 158 F.R.D. 143, 148 (D. Minn. 1994) ("The amicus privilege 'rests in the discretion of the court which may grant or refuse leave according as it deems the proffered information timely, useful, or otherwise.'" (citation omitted)), *rev'd on other grounds*, 85 F.3d 1295 (8th Cir. 1996); *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 38 F. Supp. 3d 1043, 1055 (D. Minn. 2014).

## BACKGROUND

In this case challenging a newly enacted Minnesota law, Plaintiffs Minnesota Voters Alliance (an organization that educates voters) and three individuals (collectively "MVA") argue that the law restricts political speech and must be struck down.

The Election Law prohibits the dissemination of information intending to impede or prevent another person from exercising the right to vote. The provision at the heart of this lawsuit is Subdivision 2:

> Subd. 2. Deceptive practices. (a) No person may, within 60 days of an election, cause information to be transmitted by any means that the person:
> (1) intends to impede or prevent another person from exercising the right to vote; and
> (2) knows to be materially false.
> (b) The prohibition in this subdivision includes but is not limited to information regarding the time, place, or manner of holding an election; the qualifications for or restrictions on voter eligibility at an election; and threats to physical safety associated with casting a ballot.

Minn. Stat. § 211B.075, subdiv 2.[2]

MVA brings this suit because of the Election Law's intersection with another new law, the Re-Enfranchisement Act, which restored voting rights to individuals with a felony conviction during any period when they are not incarcerated for the offense. Act of Mar. 3, 2023, ch. 12, 2023 Minn. Laws 64, 64–68. Believing that the Re-Enfranchisement Act violates the Minnesota Constitution, MVA brought a lawsuit in state court

---

[2] Subdivisions 1, 3, 4, and 5 of the statute are aimed at different purposes: intimidation (subdiv. 1); voter interference (subdiv. 3); vicarious liability (subdiv. 4); and remedies (subdiv. 5).

challenging that law as unconstitutional as well, arguing that the Minnesota Constitution "requires a Governor's pardon, full service of a felony sentence with concomitant discharge, or full restoration of 'civil rights' by legislative act, before those convicted of felonies can, constituent with the Constitution, register to vote and vote." (ECF No. 13 ("Am. Compl.") ¶ 4.) The Minnesota Supreme Court dismissed the suit, determining that the plaintiffs lacked taxpayer standing. *Minnesota Voters All. v. Hunt*, 10 N.W.3d 163, 165 (Minn. 2024). Thus, the Re-Enfranchisement Act remains in place, including for the 2024 election cycle.

MVA intends to tell prospective voters in this cycle that "[f]elons still serving their sentences do not have a right to vote in Minnesota" and "felons who have not served their full sentences, or otherwise had their sentences discharged, cannot legally vote." (Am. Compl. ¶¶ 1, 5.) Under the Re-Enfranchisement Act, these statements are at least partially false, because a person serving a sentence but not incarcerated is able to vote under that statute.

MVA asserts that it will not be able to continue making its statements under the Election Law—and indeed, Defendant Anoka County Attorney Brad Johnson has counterclaimed against MVA, asserting violations of the Election Law. (*See* Am. Compl. ¶¶ 6, 18–19; ECF No. 16 at 18–30 ("Am. Countercl.") ¶¶ 32–46.) Thus, MVA asks the Court to declare the Election Law unconstitutional under the First and Fourteenth Amendments and analogous state constitutional provisions. (Am. Compl. ¶ 22.)

Minnesota Attorney General Keith Ellison moves to dismiss, (ECF No. 23); Johnson moves for judgment on the pleadings, (ECF No. 17); and MVA moves for an injunction blocking Defendants from enforcement. (ECF No. 33.) The complaint will be dismissed because MVA fails to show that the Election Law is unconstitutional.

## ANALYSIS

### I.   Motions to Dismiss and for Judgment on the Pleadings

A motion for judgment on the pleadings is evaluated under the same standard as a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

Plaintiffs challenge the Election Law as unconstitutionally abridging freedom of speech and as unconstitutionally vague.

#### A.   *Freedom of Speech*

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."[3] U.S. Const. amend. I.

---

[3] The Minnesota Constitution's free speech protection "is coextensive with the First Amendment," so Minnesota courts "look primarily to federal law for guidance." *Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 516 (Minn. 2012). Neither party argues that state law makes a difference, and all parties look exclusively to federal law, so the Court will do the same.

4

Parties debate whether MVA properly brings a facial challenge to the Election Law, so the Court starts there.

1.   *Scope of MVA's Challenge*

Unlike an as-applied challenge, which considers the facts and circumstances of the plaintiff, a facial challenge considers the text of the statute. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). Generally, a facial challenge requires the plaintiff to show "that no set of circumstances exists under which the [statute] would be valid." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (citation omitted). However, in the First Amendment context, a plaintiff may bring "a second type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (citation omitted). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *United States v. Williams*, 553 U.S. 285, 293 (2008) (cleaned up, citation omitted).

The Court keeps in mind that facial challenges are disfavored, and for good reason. *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 685 (8th Cir. 2012). Disputes are generally best handled on a case-by-case basis, whereas facial challenges require courts to handle issues en masse. *Moody*, 144 S. Ct. at 2397. These challenges "often rest on speculation," "run contrary to the fundamental principle of judicial restraint," and undermine our

democratic system of government by invalidating laws passed by elected officials. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).

Given its disfavored status, the Court treads lightly on this issue. The Court's concern is heightened given the nature of MVA's "facial" challenge, which largely reads as an as-applied challenge. To bring a facial challenge, a plaintiff "must identify a significant difference between his claim that the statute is [facially] invalid on overbreadth grounds, and his claim that it is unconstitutional as applied to his particular activity." *Van Bergen v. Minnesota*, 59 F.3d 1541, 1549 (8th Cir. 1995). The Court "generally do[es] not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Wash. State Grange*, 552 U.S. at 449 n.6 (citation omitted). As set forth below, MVA fails this test.

MVA essentially presents an as-applied challenge cloaked as a facial challenge. *See Havlak v. Vill. of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017) ("It is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from herself."). The focus of MVA's complaint and brief is the way in which the Election Law violates MVA's First Amendment rights.[4] Nowhere does MVA provide an analysis for the Court of the

---

[4] Notably, MVA's argument assumes without explaining how its speech violates the Election Law. MVA points to Johnson's counterclaims, arguing that because Johnson counterclaims under the Election Law, MVA's speech must violate it. But Johnson is not the arbiter of the meaning of the statute, and MVA does not provide an analysis for the Court of how its speech fits within the confines of the Election Law.

6

relationship between the Election Law's allegedly unconstitutional applications judged against its legitimate sweep.

The Court will thus exercise judicial restraint and rule only on the issues that have been briefed and argued.[5] Doing so, it becomes clear that MVA's argument for facial invalidity boils down to its assertion that the statute is unconstitutional as applied to its statement that "felons cannot vote." In other words: this is largely an as-applied challenge.

2.   *As-Applied Challenge to Subdivision 2*

Taking the facts alleged in the complaint as true, MVA says and wishes to continue saying: "Felons still serving their sentences do not have a right to vote in Minnesota." (Am. Compl. ¶ 1.) It claims to have a "good-faith belief" in the truthfulness of this statement. (*Id.* ¶ 18.) This statement is not necessarily proscribed by Subsection 2 of the Election Law. First, Subdivision 2 requires that a person "knows" the statement to be materially false. MVA's subjective belief in its statement's truth necessarily means that

---

[5] MVA makes a number of arguments in its 46-page reply brief on its motion for preliminary injunction that it either did not make or only cursorily addressed in previous briefing on the motions to dismiss and for judgment on the pleadings. (ECF No. 46.) The Court will not rule on arguments raised for the first time in reply. *See, e.g., Swanda v. Choi*, No. 10-CV-970 (MJD/JSM), 2012 WL 3839334, at *3 n.9 (D. Minn. Aug. 3, 2012) ("This Court will not entertain an argument that was not raised in the initial papers filed by [] defendants and for which plaintiffs have had no opportunity to address."), *report and recommendation adopted*, 2012 WL 3839245 (D. Minn. Sept. 4, 2012).

7

the Election Law does not apply to MVA.[6] *See Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 701 (8th Cir. 2021) (affirming district court's conclusion that plaintiff was unlikely to succeed on the merits of an as-applied challenge because the statute did not prohibit plaintiff's speech).

Second, Subdivision 2 also limits proscribed speech by requiring an intent to impede a voter from voting. MVA alleges no facts alleging that it has such an intent, so its speech is not proscribed by the Election Law for that reason as well. (*Cf.* Am. Compl. ¶ 59 ("Plaintiffs . . . do not intend to impede or prevent any person from lawfully exercising the right to vote."); *see id.* ¶¶ 63, 65 (similar).)

MVA criticizes Subdivision 2 as content- and viewpoint-based. According to MVA, Subdivision 2 is content-based because it targets speech about where, when, and who can vote in an election.[7] Although the Eighth Circuit has made clear that content-

---

[6] Underlying MVA's position is its concern that someone will incorrectly ascertain MVA's intent and file a complaint under the statute. (Am. Compl. ¶ 102.) MVA points to *281 Care Committee v. Arneson*, which invalidated a statute with a similar enforcement provision to the one at issue. 766 F.3d 774, 789 (8th Cir. 2014). Both enforcement provisions of the Election Law allow anyone to file a complaint under the statute. *See* Minn. Ann. § 211B.075, subdiv. 5(b)–(c). However, *281 Care Committee* was different. It involved "core" political speech—speech entitled to the highest protection under the First Amendment. 766 F.3d at 784. Core political speech includes speech about political candidates and ballot questions. *See id.* at 784–85. MVA's speech is not core political speech; it is speech about who is eligible to vote rather than who *should be* eligible to vote. It is also not speech about any issue or candidate on the ballot. *281 Care Committee* is thus distinguishable.

[7] Subdivision 2(b) explains that the subdivision "includes but is not limited to information regarding the time, place, or manner of holding an election; the qualifications for or

based regulations of false *political* speech are subject to strict scrutiny, it is less clear whether this regulation (which does not regulate political speech) is subject to strict scrutiny. *281 Care Comm.*, 766 F.3d at 784. And MVA challenges Subdivision 2 as viewpoint-based because it takes a pro-voting stance: it prohibits wrongfully discouraging eligible voting rather than wrongfully encouraging ineligible voters. Voter suppression and voter fraud are distinct issues, and the Court doubts that the Legislature targeting one issue over another constitutes viewpoint discrimination. Regardless, even if the Court arrived at strict scrutiny, the statute would survive.

Minnesota undoubtably has a compelling interest in reducing misinformation aimed at preventing someone from voting. *Burson v. Freeman*, 504 U.S. 191, 199 (1992) ("[A] State has a compelling interest in protecting voters from confusion and undue influence" and "in ensuring that an individual's right to vote is not undermined by fraud in the election process."); *Minn. H., Hearing on H.F. 3 before the H. Pub. Safety, Fin., & Policy Comm.*, 93d Minn. Leg., Reg. Sess. (Feb. 21, 2023), available at

---

restrictions on voter eligibility at an election; and threats to physical safety associated with casting a ballot." Minn. Stat. § 211B.075, subdiv. 2(b). The "includes but is not limited to" language could be construed as unlimiting, thus opening a universe of unconstitutional application. But no party dives into that universe. Indeed, MVA seems to concede that it believes the provision to be limited; it asserts that the provision makes the statute content-based because it targets the speech listed in Subdivision 2(b). Nor does MVA point to any unconstitutional application of the statute that would be outside of the enumerated categories in Subdivision 2(b), but captured by the phrase "includes but not limited to." Thus, the Court arrives back at the same problem—MVA purports a facial-overbreadth challenge but fails to meet its burden.

https://www.house.mn.gov/hjvid/93/896392, at 1:10:50–1:11:15 (Rep. Walter Hudson explaining that election misinformation is on the rise in Minnesota). Subdivision 2, as the Court reads it, prohibits knowingly false speech about where, when, and whether someone can vote, with the intent to prevent someone from voting. It accordingly furthers Minnesota's compelling interest in protecting "the integrity and reliability of the electoral process." *Burson*, 504 U.S. at 199.

Subdivision 2 is likewise narrowly tailored. It does not reach political speech about the contents of the ballot;[8] it merely reaches speech about where, when, and who can vote. The law is limited to statements that a person knows to be materially false, and made with intent to prevent someone from voting. The statute is thus narrowly drawn to further Minnesota's interests. Confirming this analysis is the Supreme Court's pronouncement that states can undoubtedly prohibit people from spreading

---

[8] Unlike many laws subjected to litigation over the past decade, it is not aimed at (nor does it cover) false information about a political candidate (*e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)), the effect of ballot questions (*281 Care Comm.*, 766 F.3d 774), political apparel inside a polling place on Election Day (*Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018)), or false claims about party endorsements (*Republican Party of Minn. v. Miller*, No. A23-0029, 2024 WL 159126 (Jan. 16, 2024)). Subdivision 2 does not prohibit debate about a political question, even the political question of whether felons *should* be able to vote. A normative statement encouraging one policy or the other is not touched by the statute. It does not prohibit robust debate, including whether the Minnesota Constitution bars individuals with a felony conviction from voting while still on probation: indeed, such a debate occurred without interruption in Minnesota state courts. *See Hunt*, 10 N.W.3d 163.

misinformation "intended to mislead voters about voting requirements and procedures." *Mansky*, 585 U.S. at 18 n.4. Subdivision 2, which does just that, is thus constitutional.

So, either MVA's speech does not violate the Subdivision 2, and MVA cannot wage an as-applied challenge; *or*, MVA's speech violates the Subdivision 2, but the statute passes strict scrutiny and so is constitutional.

The as-applied challenge to Subdivision 2 thus fails.

3.     *Facial Challenge to Subdivision 5*

MVA makes one argument that may fall into the category of a facial challenge: it argues that Subdivision 5 of the Election Law is a prior restraint on speech. "The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted). Foundational to the First Amendment is that prior restraints are forbidden. *Grosjean v. Am. Press Co.*, 297 U.S. 233, 245–48 (1936). Prior restraints are "the most serious and the least tolerable infringement" on the freedoms of speech and press, *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), bearing "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

Subdivision 5 provides that any aggrieved citizen can sue to "prevent . . . a violation of this section if there is a reasonable basis to believe that an individual or entity . . . *intends to commit* a prohibited act." Minn. Stat. § 211B.075, subdiv. 5(b) (emphasis

added). The Supreme Court "has, for the most part, carefully limited the prior restraint doctrine to administrative and judicial orders prohibiting speech before it is actually uttered." *Auburn Police Union v. Carpenter*, 8 F.3d 886, 902 n.25 (1st Cir. 1993). Subdivision 5 is not an administrative or judicial order, it does not require advanced permission to speak, and it imposes punishment after the fact. *Id.*; *Hershey v. Jasinski*, 86 F.4th 1224, 1234 (8th Cir. 2023). Thus, the statute itself is not a prior restraint.

Still, the Court notes that the statute may authorize a court to issue a prior restraint when someone intends to commit a prohibited act. But such orders are not *per se* unconstitutional, especially when they have appropriate procedural and substantive safeguards. Such orders can be "narrowly tailored, based upon a continuing course of repetitive speech, and granted only after a final adjudication on the merits that the speech is unprotected" and consequently would not constitute unlawful prior restraints. *Auburn Police Union*, 8 F.3d at 903. The Court cannot conclude that the statute is a facially-invalid prior restraint.

B. *Vagueness*

A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citation omitted). Legislatures need not define every term in a statute. *Phelps-Roper v. Koster*, 713 F.3d 942, 952 (8th Cir. 2013). In the absence of a

definition, words are given their ordinary meaning. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). The Supreme Court has cautioned that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (citation omitted). Further, a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 20 (citation omitted). Both considerations apply here.

MVA asserts that the following phrases and terms in the Election Law are vague: (1) "threat[]" of "damage, harm, or loss" in Subdivision 1; (2) "impede" in Subdivision 2; and (3) "interfere" in Subdivision 3. *See* Minn. Stat. § 211B.075.

Underlying MVA's argument regarding Subdivisions 1 and 3 is the assumption that the subdivisions must apply to its speech because Johnson counterclaimed under all five subdivisions. The fact that Johnson counterclaimed does not affect the Court's analysis of whether the statute is vague. Absent MVA's unfounded assumption, it does not have another argument supporting that the language in Subdivisions 1 and 3 is unconstitutionally vague.

As for Subdivision 2, the Court does not find the word "impede" to be vague. The meaning of the term is plain: impede means "to interfere with or slow the progress of." "Impede" (transitive verb) df. at https://www.merriam-webster.com/dictionary/impede

[https://perma.cc/C737-H523]. The language is therefore not unconstitutionally vague. Count 3 is dismissed.[9]

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Brad Johnson's motion for judgment on the pleadings (ECF No. 17) is GRANTED;

2. Keith Ellison's motion to dismiss (ECF No. 23) is GRANTED; and

3. MVA's motion for preliminary injunction (ECF No. 33) is DENIED; and

4. American Civil Liberties Union of Minnesota's motion to appear as amicus curiae (ECF No. 48) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 17, 2024                BY THE COURT:

                                         s/Nancy E. Brasel
                                         Nancy E. Brasel
                                         United States District Judge

---

[9] Because the Court grants the motions to dismiss and for judgment on the pleadings, it denies the motion for preliminary injunction. (ECF No. 33.)